IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

STANLEY POOL,                     )
                                  )
            Plaintiff,            )
                                  )
v.                                )          Case No. CIV-11-338-M
                                  )
MICHAEL J. ASTRUE,                )
COMMISSIONER OF                   )
SOCIAL SECURITY,                  )
                                  )
            Defendant.            )

## REPORT AND RECOMMENDATION

Mr. Stanley Pool applied for insurance benefits and supplemental security income based on an alleged disability. *See* Administrative Record at pp. 110-16 (certified June 1, 2011) ("Record"). The Social Security Administration rejected the applications,[1] and Mr. Pool initiated the present action. The Court should affirm the decision of the Social Security Administration.

I.     STANDARD OF REVIEW

The Court must determine whether the Social Security Administration's decision is based on substantial evidence and the correct legal standard. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Evidence is substantial if it is greater than a scintilla. *See Sisco v. United States Department of Health & Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). If the Social Security Administration's decision lacks substantial evidence or is based

---

[1]     Record at pp. 1-4, 12-25, 64-65, 67-72, 74-77, 82-86.

on an incorrect legal standard, reversal is necessary.  *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).  However, a court may not reweigh the evidence or substitute its judgment for that of the Social Security Administration.  *See Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir. 1992).

## II.    THE PLAINTIFF'S ARGUMENTS

Mr. Pool has alleged:

- failure to "give proper attention to" the mental limitations or "develop any evidence regarding the mental demands any of the potential jobs the [vocational expert] offered would have [had] upon Mr. Pool;"

- failure to question the vocational expert regarding any discrepancies between the expert's testimony and the Dictionary of Occupational Titles ("DOT");

- lack of substantial evidence to support the residual functional capacity ("RFC") as it relates to mental health;

- failure to give weight to the treating physicians' opinions; and

- lack of substantial evidence to support the decision based on the various errors.

Mr. Pool's Brief in Chief at pp. 3-12 (Sept. 30, 2011) ("Plaintiff's Brief in Chief").  The Court should reject Mr. Pool's allegations.

## III.    THE ALLEGED ERRORS IN CONSIDERATION OF THE MENTAL LIMITATIONS

According to the Plaintiff, the administrative law judge had failed to "give proper attention to" the mental health evidence and "reduce Mr. Pool's RFC" based on depression and anxiety.  *Id.* at p. 3.  Mr. Pool also claims that the judge had failed to "develop any

evidence regarding the mental demands any of the potential jobs the [vocational expert] offered would have [had] upon Mr. Pool." *Id.* at p. 5.  The Court should reject these claims.

Mr. Pool complains that the administrative law judge had spent only "three paragraphs" considering the Plaintiff's mental limitations and limited that consideration to the "Psychiatric Review Technique" ("PRT") factors. *Id.* at p. 4.  This complaint is incorrect, as the judge discussed Mr. Pool's mental health limitations, treatment, and testimony in at least ten different paragraphs, with all but three of those focused on the Plaintiff's RFC assessment.  *See* Record at pp. 18-23.

The claim is also legally invalid, as the administrative law judge need not discuss every evidentiary item.[2]  Instead, the judge need only discuss evidence that is uncontroverted or significantly probative.[3]  Mr. Pool fails to point to any uncontroverted or significantly probative evidence that was not discussed and the record reflects careful consideration of all of the uncontroverted or significantly probative evidence.

For example, the administrative law judge stated that he had considered all of the Plaintiff's symptoms which were consistent with the objective medical evidence and the opinion evidence.  *Id.* at p. 19.  The judge then described his consideration of Mr. Pool's

---

[2]     *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (stating that the record must show "that the [administrative law judge] considered all of the evidence, but an [administrative law judge] is not required to discuss every piece of evidence" (citation omitted)).

[3]     *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("in addition to discussing the evidence supporting his decision, the [administrative law judge] also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects" (citations omitted)).

restrictions in: (1) daily living, (2) social functioning, and (3) concentration, persistence or pace. *Id.* at pp. 18-19. The administrative law judge also considered the Plaintiff's testimony concerning his mental health. *Id.* at p. 20. Finally, the administrative law judge articulated his consideration of the Plaintiff's: (1) consultative examinations, (2) treatment at the Central Oklahoma Community Mental Health Center, and (3) treatment at the Red Rock Crisis Center. *Id.* at pp. 21-22. With this discussion, the Court should reject the complaint involving the administrative law judge's failure to "give proper attention to" the mental health evidence.

According to the Plaintiff, the administrative law judge should have expressly addressed four factors identified in *Washington v. Shalala*, 37 F.3d 1437 (10th Cir. 1994), rather than the four criteria bearing on the mental health listings. The Plaintiff's argument is based on a misreading of *Washington v. Shalala* and the social security regulations.

In *Washington v. Shalala*, the court stated that the administrative law judge should assess the mental RFC based on the claimant's ability:

- to engage in the activities of daily living;

- to interact appropriately with the public, supervisors, and coworkers;

- to focus long enough to complete tasks in a timely fashion; and

- to adapt to stressful circumstances without either withdrawing from the situation or experiencing increased signs and symptoms of the claimant's mental disorder.

*Washington v. Shalala*, 37 F.3d at 1440.

The Plaintiff concedes that the administrative law judge had assessed activities of daily living.  Plaintiff's Brief in Chief at pp. 3-4.

Mr. Pool also admits that the judge had considered social functioning, but argues that he had disregarded the ability to deal with the public, supervisors and coworkers in a job setting.  *Id.* at p. 4.  The problem with this argument is that the term "social functioning" is broad and includes the ability to interact "with the public" or respond to supervisors or coworkers.[4]  Thus, by evaluating Mr. Pool's social functioning, the administrative law judge effectively assessed the ability to interact with the public, supervisors, and coworkers in an employment setting.[5]

In addition, the Plaintiff complains that the administrative law judge had assessed "concentration, persistence, and pace," but not the "ability to focus and finish a task in a timely manner."  *Id.*  The distinction is based on a misunderstanding of the phrase, "concentration, persistence, and pace."  Under the pertinent social security regulations, this term "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."

---

[4]     At the time of the administrative law judge's decision, the social security regulations provided: "Social functioning in work situations may involve interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(2) (2009).

[5]     *See Harper v. Astrue*, 428 Fed. Appx. 823, 829-30 (10th Cir. June 30, 2011) (unpublished op.) (rejecting the plaintiff's claim under *Washington* because assessment of social functioning satisfied the duty to consider the ability to interact with the public, supervisors, and coworkers).

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(3) (2009).[6]  Thus, the administrative law judge did assess the ability to focus and finish tasks in a timely manner.

Finally, the Plaintiff argues that the judge had inappropriately focused on episodes of deterioration or decompensation in work-like settings rather than the ability to adapt to stressful circumstances.  Plaintiff's Brief in Chief at pp. 4-5.  Again, the distinction is illusory.

The court in *Washington v. Shalala* did require consideration of the ability "to adapt to stressful circumstances without either withdrawing from the situation or experiencing increased signs and symptoms of the claimant's mental disorder."  *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994); *see supra* p. 4.  In doing so, the court relied on Listing 12.00(C),[7] which included the listing definition for episodes of deterioration or decompensation in work or work-like settings.[6]  The regulatory definition for that phrase, at the time *Washington* was decided, was "repeated failure to adapt to stressful circumstances which cause the individual either to withdraw from that situation or to experience exacerbation of signs and symptoms (i.e., decompensation) with an accompanying difficulty in maintaining activities of daily living, social relationships, and/or maintaining

---

[6]     The pertinent regulations are those that had been in effect when the administrative law judge issued a decision.  *See Branum v. Barnhart*, 385 F.3d 1268, 1272 n.3 (10th Cir. 2004) (citing the regulations in effect when the administrative law judge issued a decision).

[7]     *See Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994).

[6]     *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(4) (1994).

concentration, persistence, or pace (i.e., deterioration which may include deterioration of adaptive behaviors"). 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(4) (1994).

In *Washington v. Shalala*, the court referred to the ability to adapt to stresses as a benchmark for episodes of "deterioration" and "decompensation." *Washington v. Shalala*, 37 F.3d at 1440. The Plaintiff attempts to divorce the two — episodes of "deterioration/decompensation" and the ability to adapt to stress — even though they had been combined into a single factor in *Washington v. Shalala*. The Plaintiff's argument is self-defeating because it acknowledges assessment of episodes of decompensation or deterioration. *See supra* p. 6.

The Plaintiff's argument is based on an invalid distinction between the factors bearing on the mental health listings and the mental RFC. The factors are parallel[7] and the *Washington* court had drawn on the factors appearing in the mental health listings, which the administrative law judge admittedly used to evaluate Mr. Pool's RFC.

Mr. Pool also alleges that the judge had failed to incorporate mental limitations into the RFC findings. *See supra* p. 2. This allegation is incorrect, as the administrative law judge concluded:

> [The Plaintiff] experiences a moderate level of discomfort affecting his ability to work in a competitive environment. He has mental limitations in that he can understand, remember and carry out simple and routine tasks. He can interact appropriately with others at a superficial level.

---

[7]     *See Kirkland v. Apfel*, 188 F.3d 518, 1999 WL 614525, Westlaw op. at 3 (10th Cir. Aug. 13, 1999) (unpublished op.) (stating that the factors in *Washington v. Shalala* "parallel those found in Part B of the PRT form").

Record at p. 19.  This language includes mental restrictions in the RFC findings.[8]

Finally, the Plaintiff states that the administrative law judge had failed to develop the evidence regarding mental demands of potential jobs.  *See supra* pp. 2-3.  This argument is based on confusion of the regulations.

The administrative law judge must analyze five steps.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2009).  The fourth step involves the ability to perform past relevant work, and the fifth step concerns the ability to carry out other jobs.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv)-(v), 416.920(a)(4)(iv)-(v) (2009).  The Plaintiff confuses the two steps in his argument.

Mr. Pool apparently assumes a duty to develop evidence regarding the mental demands of potential jobs at step five.  Plaintiff's Brief in Chief at p. 5; *see supra* p. 8.  This assumption is based solely on the following reference to *Winfrey v. Chater*, 92 F.3d 1017, 1024 (10th Cir. 1996):

> As explained in *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996), [w]hen the claimant has a mental impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work.  *Id.* at 1024 (quotation omitted).

Plaintiff's Brief in Chief at p. 5.

---

[8]     *See*, *e.g.*, *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) ("Examples of nonexertional mental impairments include . . . 'difficulty understanding or remembering detailed instructions.'" (citation omitted)).

In *Winfrey v. Chater*, the court required development of evidence about the mental demands of work at step four — not step five. *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996). At step four, according to *Winfrey*, the administrative law judge must "make specific findings about the mental and physical demands of the jobs at issue." *Id*. The court explained that this process must necessarily be more condensed at step five because there "the scope of potential jobs is so broad." *Id*. Thus, "[a]t step five of the sequential analysis, an [administrative law judge] may relate the claimant's impairments to a [vocational expert] and then ask the [vocational expert] whether, in his opinion, there are any jobs in the national economy that the claimant can perform." *Id*.

The administrative law judge found that Mr. Pool could not perform his past relevant work. Record at p. 23. Thus, the mental demands of work are relevant only at step five. Indeed, in the present action, the judge did precisely as the court had suggested in *Winfrey v. Chater*. *See supra* p. 9. The judge described a set of physical and mental limitations and asked the vocational expert if Mr. Pool could work with these impairments. Record at pp. 58-60. The vocational expert stated that with these impairments, the Plaintiff would be able to perform light, unskilled labor. *Id.* at p. 60.

The Plaintiff incorrectly reads *Winfrey v. Chater* to require development of evidence about the mental demands of potential jobs at step five. *Winfrey v. Chater* expressly stated that this process was unnecessary at step five because it would require development of evidence about a virtually endless number of jobs. *See supra* p. 9. That process is required

only at step four, which is immaterial here because the administrative law judge had conceded Mr. Pool's inability to return to his past jobs. *See supra* p. 9 (citing Record at p. 23). As a result, the administrative law judge did not erroneously fail to develop evidence about mental demands of the jobs relied upon at step five.

IV. THE ADMINISTRATIVE LAW JUDGE'S ALLEGED FAILURE TO QUESTION THE VOCATIONAL EXPERT REGARDING ANY DISCREPANCIES WITH THE DOT

According to Mr. Pool, the administrative law judge failed to ask the vocational expert whether any discrepancy had existed between his testimony and the DOT. Plaintiff's Brief in Chief at pp. 5-6. The Defendant argues that any error is harmless on grounds that Mr. Pool has failed to identify any actual discrepancy. Brief in Support of the Commissioner's Decision at p. 11 (Nov. 29, 2011). The undersigned agrees with the Defendant.

In response to the administrative law judge's hypothetical questioning, the vocational expert identified three light, unskilled jobs that the Plaintiff could perform: (1) laundry sorter, (2) garment assembler, and/or (3) parking lot attendant. Record at p. 60. The administrative law judge adopted this testimony. *Id.* at p. 24.

In *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999), the Tenth Circuit Court of Appeals held that "the [administrative law judge] must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the [administrative law judge] may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d at 1091.

Based on this decision, Mr. Pool argues that the administrative law judge had failed to ask the vocational expert about the possibility of a conflict with the DOT. *See supra* p. 10. However, the Plaintiff does not allege any actual discrepancies. Indeed, he concedes that "the record contains no evidence of an inconsistency." Mr. Pool's Reply Brief at p. 2 (Dec. 19, 2011). Without an allegation of a conflict, any potential error would be considered harmless.[9]

Mr. Pool argues that the record could not contain evidence of an inconsistency between the [vocational expert's] testimony and the DOT "because the question was never asked by the [administrative law judge]." *Id.* This argument is facially invalid and proves too much.

The argument is facially invalid because the administrative law judge had supplied the DOT numbers for the three jobs relied upon: laundry sorter, garment assembler, and parking lot attendant. Record at p. 24. The Plaintiff, the Defendant, and the Court can examine the three job descriptions in the DOT, compare them to the vocational expert's testimony, and determine if there are any arguable inconsistencies. Notwithstanding the opportunity to make this comparison and identify any arguable inconsistencies, the Plaintiff

---

[9]     *See Martinez v. Astrue*, 316 Fed. Appx. 819, 825-26 (10th Cir. Mar. 19, 2009) (unpublished op.) (concluding that a failure to ask the vocational expert about consistency with the DOT was harmless when the claimant had not identified any discrepancies); *see also Poppa v. Astrue*, 569 F.3d 1167, 1173-74 (10th Cir. 2009) ("Because there were no conflicts between the [vocational expert's] testimony and the DOT's job descriptions, the [administrative law judge's] error in not inquiring about potential conflicts was harmless." (citations omitted)); *cf. infra* p. 12 (discussing *Martinez* and *Poppa*).

suggests that reversal is necessary whenever the administrative law judge declines to ask the vocational expert if his testimony was consistent with the DOT.

This argument proves too much because the Tenth Circuit Court of Appeals has held in a published decision that an administrative law judge's failure to inquire about potential conflicts can be considered harmless. *Poppa v. Astrue*, 569 F.3d 1167, 1173-74 (10th Cir. 2009). In unpublished decisions, the court has gone further and held that a failure to inquire about inconsistencies is harmless when the plaintiff has not identified any arguable conflicts. *Martinez v. Astrue*, 316 Fed. Appx. 819, 825-26 (10th Cir. Mar. 19, 2009) (unpublished op.).

In light of these decisions, the Court cannot automatically reverse whenever an administrative law judge fails to ask a vocational expert about potential conflicts with the DOT. At that point, the Court must ask whether the omission was harmless. Thus, the Plaintiff's argument is self-defeating when her attorney states in his reply: "[The Defendant] later states that the record contains no evidence of an inconsistency. We agree! It is because the question was never asked by the [administrative law judge], so how could the record reflect it? That is error." Mr. Pool's Reply Brief at p. 2 (Dec. 19, 2011) (emphasis in original; citation omitted); *see supra* pp. 10-11.

The Court can assume *arguendo* the existence of an error. But the Plaintiff has not addressed the distinct issue of harmlessness. The record includes the vocational expert's testimony and the judge's RFC findings; and if the Plaintiff cannot ascertain inconsistencies

between them and the DOT descriptions, the Court has little basis to find prejudice from the failure to ask about potential conflicts.

## V.   THE ALLEGED LACK OF EVIDENCE TO SUPPORT THE RFC FINDINGS RELATING TO MENTAL IMPAIRMENTS

Mr. Pool alleges that the RFC findings had conflicted with "the weight of the evidence" on mental limitations.  Plaintiff's Brief in Chief at p. 6.  The legally pertinent issue is whether the RFC findings were supported by substantial evidence,[10] and the Court should answer in the affirmative.

### A.   The Existence of Substantial Evidence to Support the RFC Findings on Mental Limitations

The administrative law judge found that Mr. Pool had "experience[d] a moderate level of discomfort affecting his ability to work in a competitive environment," but could "understand, remember and carry out simple and routine tasks" and "interact appropriately with others at a superficial level."  Record at p. 19.  The Plaintiff argues that this RFC assessment "is a fabrication" and bears "no relationship to the medical evidence."  Plaintiff's Brief in Chief at p. 6.  The Plaintiff's hyperbole is unwarranted, and the administrative law judge's assessment is supported by substantial evidence.

As the Plaintiff emphasizes, he did experience some mental health limitations.  The present issue is simply whether the administrative law judge had substantial evidence to

---

[10]     *See supra* pp. 1-2.

support his assessment of the impact on Mr. Pool's ability to carry out tasks and interact with others.

In assessing social functioning, the administrative law judge could justifiably conclude that the mental impairments had only a "moderate" impact.  For example, when the Plaintiff was being treated at the Central Oklahoma Community Mental Health Center, officials noted that Mr. Pool had good relationships with friends and got along well with others.  Record at pp. 192-95.

The administrative law judge also concluded that Mr. Pool could understand and remember simple and routine tasks.  *Id*. at p. 19.  This conclusion is supported by Dr. James Keithley's assessment that Mr. Pool's memory and concentration were intact.  *Id.* at p. 214.

In deciding how to rate the impact on social functioning and the ability to follow instructions, the administrative law judge could also consider the evaluation by a mental health professional, Laura Lochner, Ph.D.  Dr. Lochner opined in part that the Plaintiff had moderate restrictions involving the ability to maintain social functioning and to understand, remember, and carry out detailed instructions.  *Id.* at p. 235.  Thus, Dr. Lochner stated that the Plaintiff had a mental RFC which would have allowed "simple, routine work related tasks under normal supervision" and "adjust[ment] to a work related situation."  *Id.* at p. 241.

The Plaintiff has not supported his allegation of "fabrication" in the administrative law judge's RFC assessment.  Plaintiff's Brief in Chief at p. 6; *see supra* p. 13.  The

administrative law judge had substantial evidence to rate the mental limitations as he did, and the Court should reject the Plaintiff's contention.

B.      The Plaintiff's Objections

Mr. Pool disagrees on various grounds, but his arguments do not warrant reversal.

### The Judge's Use of the Term "Superficial"

The Plaintiff challenges the administrative law judge's use of the term "superficial" to describe the level of personal contact that could be tolerated. Plaintiff's Brief in Chief at p. 6. The Plaintiff indicates that he does not understand the term and argues that it does not appear in any of the medical records. *Id.* This argument is meritless.

The term "superficial" is defined in part as "being on the surface" or "concerned with and understanding only the easily apparent and obvious." Webster's New World Dictionary 1343 (3d ed. 1988). By employing the term, the administrative law judge was acknowledging the inability to engage in close interaction with the general public or coworkers. This finding is supported by substantial evidence, as described above. *See supra* pp. 13-14.

### The Plaintiff's Global Assessment of Functioning ("GAF") Scores

The Plaintiff was assigned GAF scores of 50, 52 and 55. *See* Record at pp. 185, 202, 214. According to Mr. Pool, these scores erode substantial evidence supporting the mental RFC findings. Plaintiff's Brief in Chief at pp. 7-8. The Plaintiff is incorrect.

Clinicians use the GAF system to rate an individual's overall level of functioning. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, DSM-IV-TR 32 (4th ed. rev. 2000).[11]   In relevant part, the GAF system treats:

- a rating between 41 and 50 as indicative of "[s]erious symptoms. . . [or] any serious impairment in social, occupational, or school functioning," such as an inability "to keep a job" and

- a rating between 51 and 60 as indicative of "[m]oderate symptoms, . . . [such as a] flat affect" or "moderate difficulty in social, occupational, or school functioning."

*Id.* at 34.

Only one of Mr. Pool's GAF scores fell within the more limited range; and at 50, it was at the top of that level. *See supra* pp. 15-16. His other two scores (52 and 55) fell squarely within the "moderate" range, which is consistent with the administrative law judge's assessment of mental abilities. *See supra* pp. 13, 16.

The administrative law judge heard the evidence and was charged with balancing it. When the judge did so, he had no obligation to provide a different assessment of mental limitations based on the GAF score of 50.[12]   Instead, the score was merely a "piece of evidence to be considered with the rest of the record." *Petree v. Astrue*, 260 Fed. Appx. 33, 42 (10th Cir. Dec. 28, 2007) (unpublished op.; citations omitted). Here, the record contains

---

[11]   The Tenth Circuit Court of Appeals has regarded this document as "the diagnostic Bible of mental disorders." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004) (unpublished op.).

[12]   *See Camp v. Barnhart*, 103 Fed. Appx. 352, 354 (10th Cir. June 30, 2004) (unpublished op.) (stating that a GAF score of 50, "without evidence that it impaired [the claimant's] ability to work, does not establish an impairment" (citation omitted)).

substantial evidence to support the administrative law judge's RFC assessment.  *See supra*

pp. 13-15.  Consequently, Mr. Pool's argument concerning his GAF scores does not warrant

reversal.[13]

### The Plaintiff's "Delusion"

In his initial assessment, Mr. Pool told his counselor that he had an "IQ . . . over 130"

and was only interested in working with a therapist if he or she was "someone smarter."

Record at p. 203.  The Plaintiff's attorney disagrees with his client's intelligence assessment.

And with no supporting evidence, the attorney speculates that "it is highly unlikely that [the

Plaintiff] has an IQ over 90, much less close to 130."  Plaintiff's Brief in Chief at p. 7.  The

Court is then asked to use that speculation as evidence of "the level of delusion [Mr. Pool]

is under."  *Id.*

The record is devoid of any IQ testing or a diagnosis of delusions.  *See* Record,

*passim*.  The speculation of Plaintiff's counsel is without any evidentiary support.

### The Weight Given to the Consulting Opinions

In his final argument, the Plaintiff claims that the administrative law judge should not

have given "the various consultants" "great weight" because the reports:  (1) did not

constitute medical opinions and lacked supporting medical evidence, and (2) were "stale."

Plaintiff's Brief in Chief at pp. 10-11.  The Court should reject both arguments.

---

[13]     *See Holcomb v. Astrue*, 389 Fed. Appx. 757, 759 (10th Cir. July 22, 2010) (unpublished op.)
(holding that substantial evidence existed for the mental RFC findings notwithstanding four GAF
scores between 43 and 50).

The administrative law judge gave "great weight" to the opinions of consulting doctors, Doctors Glaze, Cherry, Lochner, and Woodcock. *See* Record at p. 23 (citing documents that ultimately appeared in the record at pages 239-50 and 326-27). According to the Plaintiff, these opinions were not truly "medical opinions" because they did "not provide an opinion about what Mr. Pool could do despite his impairments." Plaintiff's Brief in Chief at p. 11. This argument is belied by the record.

Dr. Lochner opined that despite his mental impairments, the Plaintiff:

- could perform "simple, routine work related tasks under normal supervision" and adjust "to a work related situation;" but

- "[s]hould avoid highly stressful work environments and extensive contact with the general public."

Record at p. 241. Dr. Cherry indicated his agreement with Mr. Pool's "semi-skilled mental RFC." *Id.* at p. 326. Drs. Woodcock and Glaze assessed an ability to perform light work. *See id.* at pp. 243-50. These records reflect opinions about what Mr. Pool could do despite his limitations, and the Plaintiff's assertion to the contrary is not correct.

The Plaintiff also argues that the consultants' evaluations are "stale" for two reasons. Plaintiff's Brief in Chief at pp. 10-11. First, he contends that the reports by Doctors Glaze, Cherry, Lochner, and Woodcock "cannot constitute substantial evidence because they [had been] completed before Mr. Pool's health worsened." *Id.* at p. 10. Second, Mr. Pool argues that the consultants' reports are stale because they had been completed prior to the

submission of "[o]ver 80 pages of medical evidence." *Id*. at p. 11.  The two arguments are not persuasive.

The first argument is unsupported because the Plaintiff does not identify any evidence of a deterioration in his condition after Doctors Glaze, Cherry, Lochner, and Woodcock had completed their reports.

The Plaintiff's reliance on "[o]ver 80 pages of medical evidence" is unconvincing. Mr. Pool does not identify these pages or say why they are significant.  He is presumably relying on the 79 pages submitted to the Appeals Council on November 4, 2010.  *See* Record at pp. 330-408.  Because the administrative law judge had issued a decision over five months earlier,[14] he obviously did not have an opportunity to review the 79 pages. But, even now, Mr. Pool does not identify anything in the 79 pages that is inconsistent with the assessments by the four doctors.

Doctors Woodcock and Glaze assessed physical limitations and found an ability to perform light work.  *See supra* p. 18.  In the 79 pages of additional medical records, there are 24 pages pertaining to Mr. Pool's physical condition.  *See* Record at pp. 331-55.  None expressly bears on the ability to perform light work, and Mr. Pool does not suggest any reason to question the assessment by Dr. Woodcock or Glaze based on the 24-page submission.

---

[14]    *See* Record at p. 25 (noting issuance of the administrative law judge's decision on May 8, 2009).

Doctors Lochner and Cherry reviewed Mr. Pool's mental condition and assessed the impact on his RFC. *See supra* p. 18. Of the 79-page submission, 51 pages pertain to mental health treatment. Record at pp. 357-408. Again, none of these pages expressly assesses mental limitations and Mr. Pool has not identified anything in the material that would conflict with the assessment by Dr. Lochner or Cherry. *See id.*

Accordingly, the Social Security Administration could reasonably rely on the assessments by Doctors Glaze, Cherry, Lochner, and Woodcock and was not compelled to regard them as "stale" simply because there were other medical or psychological reports submitted after issuance of the administrative law judge's decision.

<u>Comments by James Keithley, Ph.D.</u>

The Plaintiff questions the assessment of "moderate" limitations in: (1) activities of daily living; (2) social functioning; and (3) concentration, persistence, or pace. Plaintiff's Brief in Chief at p. 8. Citing a report by a psychologist, James Keithley, Ph.D., the Plaintiff suggests that the limitations in some of these categories should have been greater than "moderate." *Id.* However, the administrative law judge was entitled to balance the evidence as he did.

Another psychologist, Laura Lochner, Ph.D., assessed only "moderate" limitations in: (1) activities of daily living; (2) social functioning; and (3) concentration, persistence, or pace. Record at p. 235; *see supra* p. 14.

Citing page 215, the Plaintiff states that he "has impairment in judgment in that he has trouble with memory and concentration."  Plaintiff's Brief in Chief at p. 8 (citing Record at p. 215).  On page 215, however, Dr. Keithley did not question Mr. Pool's judgment.  Instead, the psychologist stated on page 215 only that Mr. Pool had "complained of memory and concentration problems."   Record at p. 215.   On the preceding page, Dr. Keithley had observed that:

- Mr. Pool's "judgment was good" and

- his "memory and concentration appeared intact."

*Id.* at p. 214.

C.    Summary

The evidence could reasonably be interpreted to indicate an ability to "understand, remember and carry out simple and routine tasks" and "interact appropriately with others at a superficial level." *Supra* p. 13 (quoting Record at p. 19).  This Court cannot reweigh that evidence and should reject the Plaintiff's challenge.

VI.    THE ADMINISTRATIVE LAW JUDGE'S ALLEGED FAILURE TO GIVE ANY WEIGHT TO THE TREATING PHYSICIANS' OPINIONS

In the title to this proposition, the Plaintiff alleges that the administrative law judge had given "no weight to the treating physicians['] opinions." Plaintiff's Brief in Chief at p. 8. In the body of his argument, he changes his claim slightly, arguing that the judge had failed to specify the weight "given to the opinions of Mr. Pool's treating physician." *Id.* at p. 9. Regardless of how the allegation is read, the Court cannot address the merits of the claim

because Mr. Pool "does not identify which treating physician [he] feels was ignored, and [the Court] will not speculate on [his] behalf." *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003). With no way to evaluate this claim, the Court should reject the Plaintiff's argument for reversal.

VII. THE ALLEGED LACK OF SUBSTANTIAL EVIDENCE FOR THE DENIAL OF BENEFITS

In his final ground for relief, Mr. Pool argues that "[w]ith the four errors outlined above, it is obvious that there is insufficient evidence to support this [administrative law judge] decision." Plaintiff's Brief in Chief at p. 12. This argument appears to involve a theory of cumulative error. Such an argument is invalid here. As discussed above, there was only one possible error and it would have been harmless. *See supra* pp. 10-13.

VIII. RECOMMENDED RULING

The Court should affirm the decision of the Social Security Administration.

IX. NOTICE OF THE RIGHT TO OBJECT

Any party may file written objections with the Clerk of the United States District Court. *See* 28 U.S.C.A. § 636(b)(1) (2011 supp.). The deadline for objections is May 20, 2012. *See* Fed. R. Civ. P. 6(a)(1)(C), 6(d), 72(b)(2). The failure to file timely objections would result in waiver of the right to appeal the suggested ruling. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

X. STATUS OF THE REFERRAL

The referral is discharged.

Entered this 3rd day of May, 2012.

_Robert E. Bacharach_____

Robert E. Bacharach
United States Magistrate Judge